I respectfully dissent from the majority Opinion and Award herein for the reasons set forth below:
On April 29, 1992, while working for defendant, plaintiff sustained an admittedly compensable injury by accident when he lacerated his right leg on the corner tailgate of a truck. Plaintiff was predisposed to infection after an injury. Predictably, plaintiff's leg became infected and required treatment which plaintiff sought approximately 18 hours after the injury. Plaintiff's infection was resistant to antibiotics causing a number of unusual problems due to plaintiff's peculiar susceptibility. Plaintiff's doctors became frustrated because they could not get the infections under control. The potent antibiotics used to treat plaintiff's infections caused gastrointestinal problems requiring surgery to remove some of his stomach where ulcers from the medication were developing.
Plaintiff's claim for an injury by accident to his right leg was accepted as compensable and the parties executed a Form 21 agreement for payment of compensation which was approved by the Industrial Commission on June 8, 1992. Additionally, defendant specifically accepted liability for plaintiff's gastrointestinal problems caused by medications plaintiff took for his leg infection as shown in the letter from J. E. Bartholomew to Dr. Noto dated March 18, 1993. Plaintiff is entitled to the presumption of continuing disability until he returned to work earning the same or greater wages. Defendant offered plaintiff a job beginning November 23, 1993. Plaintiff refused defendant's offer of employment and found employment on his own earning greater wages at an unspecified later date. Plaintiff is not making a claim for additional temporary total disability after defendant terminated payments on November 19, 1993.
Defendant has also refused to pay medical expenses for certain treatment provided to plaintiff for his leg infections and gastrointestinal problems; both are accepted claims. Defendant has not moved to have the Form 21 agreement set aside under N.C. Gen. Stat. § 97-17.
Defendant decided to terminate plaintiff's temporary total disability benefits in this case after Dr. Michael D. Cogburn, a dermatologist who treated plaintiff from July 16, 1992 through October 12, 1993, concluded that plaintiff's leg lesions were factitious in origin. Dr. Cogburn's conclusion is based upon the following reasoning:
1. He knew of no diseases that would fit the exact pattern or process of plaintiff's infection.
2. It is easy to mutilate the body in his opinion.
3. He had ruled out other suspected disease processes.
4. He had never seen a puncture type wound that looked like plaintiff's.
5. At times plaintiff would appear with new lesions that were perfectly round as if something had been burned into the skin such as a cigarette or a hot instrument.
6. He believed plaintiff did not have any real gastrointestinal problems.
7. Reliance upon notes of Patricia Whitaker, plaintiff's home health nurse.
Patricia Whitaker is a registered nurse who provided the most frequent nursing treatment to plaintiff. She provided home treatment to plaintiff beginning July, 1992. She went to plaintiff's home to care for his wounds, which included applying medication and wrapping. Plaintiff received nursing care almost every day in July. By July 20, 1992 plaintiff's infection was worsening and he had developed gastrointestinal problems from all of the medication he was taking. Dr. Lee began to suspect plaintiff was manipulating his wounds; however Ms. Whitaker who treated plaintiff almost every day did not agree. According to Ms. Whitaker, plaintiff was cooperative and appeared to be following his doctor's advice during the entire time he was receiving home health nursing care. Ms. Whitaker never suspected that plaintiff had removed a bandage and replaced it.
By July 29, 1992 plaintiff was having hallucinations and crying spells from the steroid therapy. On August 1, 1992, plaintiff saw Dr. Cogburn on an emergency visit. From the time plaintiff left home until the time he was seen by Dr. Cogburn, a period of approximately two hours, five large fluid-filled bubbles had come to the surface and burst under the wrapping on plaintiff's leg. Plaintiff's leg had remained wrapped during that entire period.
In early September 1992, the medication used on plaintiff's wounds was changed from Silvadene cream to Duoderm paste. Noticeable improvement appeared within several days. Plaintiff's leg lesions began to granulate; however plaintiff began to develop new blisters at the top of the leg by October 9, 1992 and also had some gastrointestinal and rectal bleeding. He was started on new medication for his gastrointestinal problems. His Prednisone was reduced. Plaintiff continued to have blisters on his legs that were fewer in number and appeared to respond to treatment with Duoderm paste. Plaintiff's home health service was discontinued in December of 1992. At that time he was ambulatory and able to drive. Ms. Whitaker never saw any evidence or had any reason to believe that plaintiff was manipulating his wounds or causing wounds to his leg. Ms. Whitaker began to look for evidence of this after a medical report suggested factitial disease and still saw no evidence or reason to believe that plaintiff was causing his own wounds.
Dr. Lee began to note concerns about manipulation by the patient and non-compliance because Home Health had allegedly checked and found the patient not at home several days during the week prior to June 23, 1992. However, based upon medical records from Medical Personnel Pool signed by S. Fillmon, R. N., plaintiff was "d/c" discontinued from Home Health Services and began being seen on an outpatient basis on June 17, 1992 which is the time period his absence from home was noted by Dr. Lee.
Dr. Joseph A. Noto began consulting on plaintiff's case a week or two after his injury. He is of the opinion that plaintiff's leg lesions resulted from his injury and were not factitial in origin and that the medications taken to treat plaintiff's leg infections caused his gastrointestinal problems. He observed the ulcers on plaintiff's leg would be an inch or so deep and in his opinion could not be characterized as skin wounds. Dr. Noto was of the opinion that the swelling in plaintiff's leg kept his skin from coming together causing his leg not to drain properly and the ulcers to recur.
If plaintiff caused a worsening of his injury due to intentional self-infliction there is no evidence as to when this intentional worsening occurred. Plaintiff's first admission to the hospital for leg infection was on May 9, 1992, less than two weeks after his injury. Plaintiff's discharge diagnosis on May 19, 1992 was (1) "cellulitis of the right leg secondary to trauma; (2) Thrombophlebitis; (3) obesity. Dr. Joseph Noto, who is board certified in general, vascular and chest surgery and Director of Trauma Services at Memorial Mission Hospital, was the only doctor who expressed an opinion on whether plaintiff's early cellulitis was self-inflicted. Dr. Noto began consulting on plaintiff treatment for the infection or cellulitis in early May 1992. Dr. Noto was of the opinion that a factitious condition would not have caused the degree of cellulitis, swelling and infection that he initially saw in plaintiff (Depo. p. 52).
The majority has found that the recurring infections in plaintiff's right leg were not the natural and probable result of the cut plaintiff sustained in his accident, but were of factitial origin. There is no finding of when plaintiff allegedly began to cause his own wounds. Certainly, the initial infection was job related. It is clear from the evidence that the antibodies used to treat plaintiff's infection caused his gastrointestinal problems, but the majority has found that plaintiff's gastrointestinal problems were not the natural and probable results of the cut on plaintiff's right leg. There is no evidence that plaintiff was a malingerer or the type person who would intentionally misrepresent the degree of his injury.
The majority addressed the issue of plaintiff's entitlement to permanent partial disability simply by finding as a fact and concluding as a matter of law that plaintiff is not entitled to permanent partial disability. Liability for these claims has been accepted by defendant and defendant did not move for an Order to set aside the Form 21 agreement. No finding was made that plaintiff was rated by Dr. Noto with a 20 percent permanent partial disability to his leg. No finding was made that plaintiff was rated by Dr. Scott J. Spillman, at the request of defendant with a five percent permanent partial disability to the right leg and a five percent permanent partial disability to the stomach. No weight, however, should be accorded the testimony or rating of Dr. Spillman because he saw plaintiff once on December 1, 1993 and based his opinion on incomplete records, a lack of understanding of the specific details and course of treatment and by adopting or concurring with the alleged opinion of one other doctor whose records he was not sure he had. Also, Dr. Spillman is a physician with no specialty in the field of medicine but classifies himself as an occupational doctor.
Based upon the evidence, I believe plaintiff's recurring leg infections and gastrointestinal problems were caused by or the direct and natural consequence of his April 29, 1992 injury by accident. Plaintiff is entitled to permanent partial disability compensation for the 20% impairment rating to his leg and the 5% impairment rating to his stomach. Plaintiff is also entitled to medical compensation for all of the medical treatment received for his leg and gastrointestinal problems.
I, therefore, respectfully DISSENT.
 S/ ________________ BERNADINE S. BALLANCE COMMISSIONER
BSB/jmf/md